**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN JANSON** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 25-2224** |
| | : | |
| **THOMAS ESTES, WATERSHIPBLUE,** | : | |
| **LLC** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                              **July 22, 2025**

      A senior employee sued the chief executive officer of his former employer for fraud and violation of the Pennsylvania Wage Payment Collection Law months after the Pennsylvania statutes of limitations expired. The employer's CEO (chief executive officer) moves to dismiss filed beyond the statute of limitations. The senior employee counters we should equitably toll the statute of limitations because participate in an arbitration proceeding involving his former employer and the parties did not complete the arbitration because his former employer did not pay the arbitration fees. The senior employee argues the former employer and its CEO misled him by not paying arbitration fees when he thought they were paying them and their failure to do so also creates extraordinary circumstances allowing us to toll the statute of limitations. We find the senior employee has not presented evidence of a fraudulent concealment tolling the statute of limitations. We find no evidence the former employer or its CEO affirmatively concealed or misled the departed senior employee regarding being able to sue the CEO in court. The former employer's alleged failure to pay the arbitration fee did not challenge the validity of senior employee's wage or fraud claim. We also find the senior employee offers no basis for extending an equitable tolling doctrine for extraordinary circumstances under Pennsylvania law when the senior employee voluntarily chose to bring his claim in arbitration against the CEO when he did not need to and

then watched the arbitration lapse without protecting his interests. We grant the CEO's Motion to partially dismiss the claims for fraud and under the Pennsylvania Wage Payment and Collection law as barred by the statutes of limitations.

I. **Alleged facts**

South Carolina citizen WatershipBlue, LLC promotes water transference around the world.[1] Thomas Estes served as its Chief Investment Officer beginning on an unpleaded date and later became its Chief Executive Officer.[2]

***WatershipBlue and Mr. Janson agree to compensation terms including arbitration.***

WatershipBlue LLC recruited and hired Pennsylvanian John Janson "to help grow the organization as a whole."[3] Mr. Janson signed a Corporate Executive Employment Agreement with WatershipBlue in April 2019.[4] CEO Estes is not a party to Mr. Janson's employment contract. The parties agreed WatershipBlue hired Mr. Janson as "Vice President of Business Development" and an "Executive" of WatershipBlue, WatershipBlue agreed to pay Mr. Janson $15,000 per month with a portion deferred pending company achievements, and WatershipBlue would, among other things, award Mr. Janson company stock and provide health benefits, life insurance, and disability coverage.[5] The parties agreed the term of employment would be four years "with possible extensions upon mutual agreement."[6]

The parties agreed as to severance if WatershipBlue terminated Mr. Janson either for cause or without cause. The parties agreed "cause" included the commission of a felony, embezzlement, Act" or "UK Bribery Act."[7] If WatershipBlue terminated Mr. Janson without cause he would be entitled to "all salary, bonus and expense amounts earned or due at [his] final day" in an "immediately payable lump sum" and nine months of severance compensation at his "Base Salary" with "all existing benefits."[8] The parties also agreed WatershipBlue would pay Mr. Janson "all

deferred and owed compensation upon separation under applicable wage laws regardless of contractual severance obligations."[9]

WatershipBlue and Mr. Janson agreed "a) All disputes will be settled by binding arbitration in accordance with the rules of the American Arbitration Association" and "b) Losing Party pays all costs."[10]

### *Mr. Janson works for WatershipBlue and its successor for two years.*

Mr. Janson worked for WatershipBlue for two years.[11] Mr. Janson performed well and developed substantial investments in WatershipBlue.[12] WatershipBlue only paid Mr. Janson a fraction of his monthly salary each month with the balance "deferred."[13]

During the term of Mr. Janson's employment, WatershipBlue transitioned its corporate status "from an S-Corp to an LLC."[14] But its day-to-day operations remained the same.[15]

### *WatershipBlue terminates Mr. Janson and does not pay severance.*

WatershipBlue terminated Mr. Janson's employment in a Zoom call on April 29, 2021.[16] Unpleaded persons told Mr. Janson WatershipBlue terminated him because CEO Estes did not care for Mr. Janson's management style or business approach.[17] WatershipBlue confirmed Mr. Janson's termination in an April 30, 2021 letter.[18] WatershipBlue claimed Mr. Janson was not transparent or accountable.[19] But it also offered Mr. Janson a lesser position as an hourly employee "Advisor" on the "condition that he waive all legal claims to owed compensation."[20] Mr. Janson did not accept the new role because doing so would have extinguished his rights under his original employment agreement.[21]

The parties ended their employment relationship. WatershipBlue did not pay Mr. Janson his "deferred" compensation from before termination or the severance allegedly owed under the agreement, which totaled more than $415,000 in compensation.[22] WatershipBlue told Mr. Janson

he was not "entitled to anything because his Employment Agreement was with WatershipBlue Corp., not WatershipBlue, LLC."[23]

*__The parties proceed to the contractual arbitration on all claims and then end up here.__*

Mr. Janson began the arbitration process with the American Arbitration Association on January 25, 2022 consistent with his employment agreement suing for breach of contract and related contract theories, fraud, and violation of the Pennsylvania wage payment law.[24] The Association appointed an arbitrator. The parties litigated for three years allowing them to complete written discovery, conduct depositions, and attempt mediation.[25] The Arbitrator scheduled trial to begin on February 18, 2025.[26] But, notwithstanding repeated notices from the Association, WatershipBlue and CEO Estes did not pay the required arbitrator and administrative fees for the arbitration trial resulting in the Association terminating the arbitration process on March 7, 2025.[27]

Mr. Janson sued CEO Estes and WatershipBlue a few weeks later in Pennsylvania state court.[28] Mr. Janson alleges claims for breach of contract against WatershipBlue, breach of implied covenant of good faith and fair dealing against WatershipBlue, violations of wage laws against WatershipBlue and CEO Estes, detrimental reliance against WatershipBlue and CEO Estes, promissory estoppel against WatershipBlue and CEO Estes, unjust enrichment against WatershipBlue and CEO Estes, and common law fraud against WatershipBlue and CEO Estes.[29] CEO Estes timely removed from the state court.[30] Mr. Janson has still not served WatershipBlue and it is not before us.

**II. Analysis**

CEO Estes now moves to dismiss the wage payment and fraud claims against him, arguing (1) the wage law and fraud claims are time-barred; (2) Mr. Janson has not alleged CEO Estes's involvement; and (3) the gist of the action doctrine precludes such restatement of a contract or

promissory estoppel claim into a claim for fraud.[31] Mr. Janson opposes, arguing the parties have been in active litigation for years which he concludes tolls the applicable statutes of limitations.[32] Mr. Janson further argues CEO Estes raises statute of limitations arguments in bad faith, as CEO Estes and WatershipBlue obstructed earlier arbitration proceedings.[33]

We find Mr. Janson has not established the statutes of limitations on his wage law and fraud claims should be tolled after we have afforded him multiple attempts to do so. We dismiss his wage law and fraud claims with prejudice. Mr. Janson can proceed on his breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment claims against CEO Estes. We dismiss the wage payment and fraud claims against him. And we wait to see if Mr. Janson serves WatershipBlue and brings it into this action.

### A. Mr. Janson's wage law and fraud claims are time-barred on their face.

Mr. Janson argues his claims are timely because we should toll the applicable statutes of limitations because of WatershipBlue's and CEO Estes's bad faith in earlier arbitration proceedings. CEO Estes argues Mr. Janson did not preserve his claims.

Statutes of limitations are generally an affirmative defense, so "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."[34] But our Court of Appeals has long held statute of limitations defenses can be considered on a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[35] Mr. Janson's swears CEO Estes and WatershipBlue engaged in the challenged conduct from April 2019 to April 2021.[36]

### 1. Mr. Janson's wage law claims are time-barred on their face.

Mr. Janson alleges WatershipBlue "never paid any of his outstanding owed base salary that was allegedly deferred upon separation. . . . [,] not paid all benefits and compensation following

5

his separation . . . [, and] not paid 9 months of severance, which was contractually assured to him."[37]

Mr. Janson does not allege which wage and collection law he sues under but we assume he brings claims under Pennsylvania law as he resides here. The Pennsylvania General Assembly, through the Pennsylvania Wage Payment and Collection Law, "provides a cause of action for employees to recover wages and other benefits that are contractually due to them."[38] "'The statute of limitations for a Pennsylvania Wage Payment and Collection Law claim is three years after the day on which such wages were due and payable as provided in sections' 260.3 and 260.5."[39] The Pennsylvania General Assembly provided all wages earned in a pay period are due and payable "within the number of days after the expiration of said pay period as provided in a written contract of employment or, if not so specified, . . . within 15 days from the end of such pay period" and, in the event of separation from the payroll, "not later than the next regular payday."[40] Mr. Janson alleges WatershipBlue terminated him in April 2021.[41] This would mean, as WatershipBlue paid him monthly, it owed him wages under the Act "due" by the end of May 2021. Mr. Janson's statute of limitations ran in May 2024. Mr. Janson's fraud claim is time-barred unless he can show us a basis in equity to toll this limitations period.

### 2. Mr. Janson's fraud claims are time-barred on their face.

Mr. Janson alleges CEO Estes and WatershipBlue "orchestrated a plan whereby they exploited Plaintiff, promised him a set amount of income, benefits, and stocks, and devised a justification for not paying him post separation that was intended throughout Plaintiff's entire period of employment."[42] He further alleges they committed fraud "and then tried to conceal such fraud by attempting leverage and/or force a severance agreement for Plaintiff to waive all of its wage violations in conjunction with Plaintiff's termination from employment."[43]

In Pennsylvania "[t]he statute of limitations for these fraud-based claims is two years."[44] Mr. Janson alleges CEO Estes and WatershipBlue sought to perpetrate this fraud and deny him compensation under his employment agreement throughout his employment, culminating in the April 30, 2021 letter where they sought to convince him to take a lesser position and extinguish his rights under his original employment contract. Therefore, the statute of limitations started running on this fraud claim in April 2021 and concluded in April 2023. Mr. Janson's fraud claim filed in state court in March 2025 is untimely.

### B. Mr. Janson offers no basis to equitably toll the statutes of limitation.

Mr. Janson's claims for statutory wages and fraud are facially untimely. So, we can only hear them if we find he has shown an equitable basis for us to toll the statute of limitations.

The parties cite only to federal law. But "Pennsylvania law determines whether equitable tolling applies to its statute of limitations."[45] We read Mr. Janson's federal tolling arguments as arguing analogous theories under Pennsylvania state law.

Generally speaking, applying equitable tolling pauses the running of, or "tolls," a statute of limitations.[46] "The doctrine of equitable tolling [extends] a statute of limitations when a party, through no fault of its own, is unable to assert its right in a timely manner."[47] "Equitable tolling has evolved as an 'umbrella' concept, encompassing a variety of rationales for tolling a statute of limitations."[48] "A broad array of situations have been deemed to fall within the concept of equitable tolling" including "fraud and concealment," "tolling permitted under the discovery rule," "extraordinary circumstances where a plaintiff is prevented from asserting his rights," "and where a plaintiff asserts his rights in the wrong forum[.]"[49] But "[c]ourts generally disfavor equitable tolling where the plaintiff missed the deadline because of a lack of due diligence."[50]

Mr. Janson advances two theories of equitable tolling: (1) WatershipBlue and CEO Estes actively misled Mr. Janson by secretly not paying arbitration fees and allowing the proceeding to

default; and (2) their same conduct constitutes extraordinary circumstances preventing him from timely asserting his rights in court.[51]

Mr. Janson does not establish a basis to toll premised on misleading conduct. The fraudulent concealment doctrine tolls the statute of limitations where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry."[52] "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff[] justifiably relied."[53] "Mere mistake, misunderstanding or lack of knowledge is insufficient however; and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party."[54] Additionally, as with the discovery rule, to toll the statute of limitations under the doctrine of fraudulent concealment, Mr. Janson must exercise reasonable diligence to discover his injury.[55] "Reasonable diligence is not shown unless a plaintiff can demonstrate that he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others."[56]

Mr. Janson does not offer a basis to toll based on fraudulent concealment. He does not allege an affirmative act of concealment. Mr. Janson filed a Civil Action Complaint with the American Arbitration Association himself.[57] Mr. Janson alleges WatershipBlue and CEO Estes let the arbitration proceedings default by failing to pay arbitration fees, but such bald allegations are insufficient. He must instead show CEO Estes denied the injury occurred or misled him regarding the availability of a cause of action—neither of which CEO Estes is alleged to have done.[58] CEO Estes's alleged failure to pay the arbitration fee did not deny the validity of Mr. Janson's wages claim or suggest he could not avail himself of a cause of action.

8

Mr. Janson's decision to not timely act does not warrant tolling based on fraudulent concealment. Mr. Janson presumably received notices about owed fees and could have, as an exercise in due diligence, communicated with WatershipBlue and CEO Estes about the proceedings. He chose to not do so. Mr. Janson also could have reached out to the arbitrator to inquire as to the status of the owed fees and consequences for continued failure to pay. He chose to not do so. Mr. Janson could have paid the arbitration fees himself, as there was no formal requirement for CEO Estes or WatershipBlue pay for the arbitration fees.[59] He chose not to. The bar for equitable tolling is high and Mr. Janson does not meet it.

We turn to Mr. Janson's second basis for equitable tolling based on extraordinary circumstances. We recognize no set test for extraordinary circumstances under Pennsylvania law. But Pennsylvania courts have held, by way of example, deadlines in the spring of 2020 could be equitably tolled due to the occurrence of the COVID-19 global pandemic.[60] Mr. Janson makes no such showing.

Mr. Janson cites to Judge Rodriguez's analysis in a Texas case from seven years ago *Gutierrez v. Drill Cuttings Disposal Company* in support of his argument we should toll the statutes of limitations.[61] But Judge Rodriguez's analysis is plainly distinguishable. Judge Rodriguez in *Gutierrez* applied Fifth Circuit law on equitable tolling. We apply Pennsylvania law. The plaintiffs in *Gutierrez* agreed to arbitrate all their claims under a binding agreement and under a court order, so they would forfeit their claims after the end of arbitration if they were later barred by the applicable statutes of limitations from filing in court.[62] We face a much different situation. The parties did not require Mr. Janson assert wage law or fraud claims in arbitration.[63] He chose to do so. The parties did not agree suits against CEO Estes in his individual capacity must be arbitrated. Mr. Janson chose to bring his claims against CEO Estes in arbitration. And our analysis

9

may be different (and possibly closer to Judge Rodriguez's analysis) if Mr. Janson's ongoing breach of contract claims (arguably within the scope of the arbitration agreement) were untimely under the applicable four-year statute of limitations and he sought equitable tolling of the statute of limitations on those contract claims. But we do not face those facts: the parties agree Mr. Janson's breach of contract and quasi-contract claims are timely. We find *Gutierrez* inapposite because Mr. Janson chose to arbitrate wage and fraud claims he did not need to arbitrate.[64] He faced no inequitable compulsion to arbitrate those claims. He chose to do so and then inexplicably did not protect his interests in ensuring the arbitration continued to trial.

Equitable tolling of statutes of limitations is the exception under Pennsylvania law, not the rule. Mr. Janson has not met this high bar. We dismiss his fraud and wage collection claims with prejudice as a matter of law.[65]

### III. Conclusion

We dismiss Mr. Janson's claims for violations of wage laws and common law fraud (Counts III and V) with prejudice as a matter of law. We do not dismiss his claims for detrimental reliance, promissory estoppel, or unjust enrichment pending further determination on the breach of contract claims.

---

[1] ECF 21 ¶ 8. Mr. Janson's counsel mistakenly identified the citizenship of WatershipBlue in his second amended Complaint having earlier addressed our concerns with subject matter jurisdiction by swearing WatershipBlue's only member is a South Carolina citizen. ECF 7. We enjoy subject matter jurisdiction notwithstanding counsel's error given his earlier sworn representation of citizenship and no challenge to the earlier sworn representation.

[2] ECF 21 ¶ 6.

[3] *Id.* ¶ 11.

[4] *Id.* ¶ 13.

[5] *Id.* ¶ 14.

---

[6] *Id.* ¶ 15.

[7] *Id.* ¶ 20.

[8] *Id.* ¶ 16.

[9] *Id.*

[10] ECF 21-2 ¶ 21.

[11] ECF 21 ¶ 17.

[12] *Id.* ¶ 24.

[13] *Id.* ¶ 23.

[14] *Id.* ¶ 26.

[15] Mr. Janson alleges: "(1) The business name remained the same, "WatershipBlue[";] (2) Nothing internally or externally changed with operations or procedures; (3) The same employees and management remained; (4) No internal adjustment of employee data or information; (5) Mr. Janson (nor any other employee) ever had to reapply for a role and continued working despite a corporate status/taxation preference or change; (6) No clients, donors, or investors signed new documents; (7) WatershipBlue did not adjust information with third parties, vendors, or others; (8) WatershipBlue and Mr. Estes kept the same e-mail, same letterhead, and same website advertising; (9) Plaintiff was still paid in the same manner before and after the corporate status change, all in accordance with his Employment Agreement; (10) All Parties operated under the terms of Plaintiff's Employment Agreement through continued discussion until Plaintiff was terminated; (11) In addition to the same management, the business initially had the same Board of Directors when it changed from an S-Corp to an LLC; and (12) Management and Directors' on-line resume remained the same not indicating any new company or business in which they allegedly became employed with or worked within." *Id.*

[16] *Id.* ¶ 17.

[17] *Id.*

[18] *Id.* ¶ 18.

[19] *Id.*

[20] *Id.*

[21] *Id.* ¶ 19.

[22] *Id.* ¶ 23.

[23] *Id.* ¶ 25.

---

[24] *Id.* ¶ 30.

[25] *Id.* ¶ 32.

[26] *Id.* ¶ 34.

[27] *Id.* ¶ 35.

[28] ECF 1.

[29] ECF 21.

[30] *Id.*

[31] ECFs 23, 24.

The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[32] ECF 25.

12

[33] *Id.*

[34] *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

[35] *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)) (footnote omitted).

[36] *See generally* ECF 21.

[37] *Id.* ¶¶ 49–50.

[38] *Roark v. SA Piper Logistics*, No. 23-1415, 2024 WL 666179, at *2 n.29 (M.D. Pa. Feb. 16, 2024) (citing *In re Cargill Meat Sols. Wage and Hour Litig.*, 632 F. Supp. 2d 368, 397 (M.D. Pa. 2008)).

[39] *Carlson v. Qualtek Wireless LLC*, No. 22-125, 2022 WL 3229399, at *14 (E.D. Pa. Aug. 10, 2022) (citing 43 PA. STAT. ANN. § 260.9a(g)), *aff'd*, No. 22-2569, 2023 WL 5094566 (3d Cir. Aug. 9, 2023)).

[40] 43 PA. STAT. ANN. §§ 260.3(a), 260.5(a).

[41] ECF 21 ¶¶ 17–18.

[42] *Id.* ¶ 57.

[43] *Id.* ¶ 58.

[44] *Belfi v. Wagner*, No. 23-4346, 2024 WL 4349953, at *11 (E.D. Pa. Sept. 30, 2024) (citing *Kliesh v. Select Portfolio Servicing, Inc.*, 527 F. App'x 102, 104 (3d Cir. 2013); 42 PA. CONS. STAT. § 5524(7)).

[45] *Oldham v. Pennsylvania State Univ.*, 138 F.4th 731, 752 (3d Cir. 2025) (collecting cases); *see also Falbo v. State Farm Life Ins. Co.*, No. 96-5540, 1997 WL 116988, at *10 n.8 (E.D. Pa. Mar. 13, 1997) (first citing *Patterson v. American Bosch Corp.*, 914 F.2d 384, 387 (3d Cir. 1990), then citing *Applebaum v. State Farm Mut. Auto. Ins. Co.*, 626 F. Supp. 1299, 1303 n.2 (M.D. Pa.), *aff'd*, 806 F.2d 251 (3d Cir. 1986)) ("Pennsylvania law, rather than federal law, governs the relevant statute of limitations period, the date of accrual, and any equitable tolling rules which might apply in this diversity action.").

[46] *Dubose v. Quinlan*, 173 A.3d 634, 644 (Pa. 2017) (citation omitted).

[47] *DaimlerChrysler Corp. v. Commonwealth*, 885 A.2d 117, 119 n.5 (Pa. Commw. Ct. 2005).

[48] *Nicole B. v. Sch. Dist. of Philadelphia*, 237 A.3d 986, 995 (Pa. 2020) (citing *David v. Hall*, 318 F.3d 343, 345–46 (1st Cir. 2003)).

[49] *Id.* at 995–96 (citations omitted).

[50] *Sule v. Echenberg*, No. 15-3035, 2016 WL 5416999, at *4 (Pa. Super. Ct. Aug. 22, 2016) (quoting *Altopiedi v. Memorex Telex Corp.*, 834 F. Supp. 800, 806 (E.D. Pa. 1993)).

[51] ECF 25 at 6–9.

[52] *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 248 (Pa. 2021) (quoting *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987)) (cleaned up).

[53] *Leonard v. City of Pittsburgh*, 570 F. App'x 241, 245 (3d Cir. 2014) (quotation omitted).

[54] *Rice*, 255 A.3d at 248 (quoting *Molineux*, 532 A.2d at 794) (cleaned up).

[55] *Riad v. Wells Fargo Bank, N.A.*, No. 22-1757, 2023 WL 8676234, at *3 and n.25 (3d Cir. Dec. 15, 2023) (quoting *Rice*, 255 A.3d at 249, 253).

[56] *Id.* at *3 and n.26 (quoting *Wilson v. El-Daief*, 964 A.2d 354, 363 n.6 (Pa. 2009)).

[57] ECF 21 ¶ 30.

[58] *Gunn v. Cornell Abraxas Grp., LLC*, 751 F. Supp. 3d 530, 540 (W.D. Pa. 2024) (first citing *Getchey v. Cnty. of Northumberland*, 120 F. App'x 895, 899 (3d Cir. 2005), then citing *Fox v. Lackawanna Cnty.*, No. 16-1511, 2017 WL 5007905, at *8 (M.D. Pa. Nov. 2, 2017)).

[59] The contract Mr. Janson attached to his Complaint requires only the "[l]osing party pay all costs[,]" but the arbitration was decisionless and therefore Defendants were not solely obligated to pay. ECF 21-2 ¶ 21(b).

[60] *See, e.g.*, *In re Est. of Garbutt*, 293 A.3d 643 (table case), at *6 (Pa. Super. Ct. 2023) ("Although the co-guardians for Mr. Garbutt did not file an application for an extension of time within the statutory time period, the orphans' court determined that the deadline should be equitably tolled due to the extraordinary circumstances presented during the two months prior to the expiration of the election period. Those circumstances included the global Covid-19 pandemic which caused numerous shut-downs and closures, including the shut-down of the orphans' court to all non-essential business and the shut-down of Attorney McKenna's law firm offices.").

[61] ECF 25 at 7–8 (citing *Gutierrez v. Drill Cuttings Disposal Co.*, 319 F. Supp. 3d 856 (W.D. Tex. 2018)).

[62] *Gutierrez*, 319 F. Supp. 3d at 860 ("The Court finds that the circumstances here warrant equitable tolling. Plaintiffs were unable to pursue their claims any further while arbitration was ongoing, and after arbitration was terminated, Plaintiffs diligently pursued their rights by filing the present action. Thus, the Court finds that Plaintiffs' claims are not time-barred.").

[63] CEO Estes is not a party to the contract and has not addressed language in the contractual arbitration clause suggesting he is. We will not opine on the scope of the arbitration clause in dicta. We proceed consistent with the record showing the parties did not agree CEO Estes (as a non-party to the contract) would need to go to arbitration under the contract. He instead chose to do so under no compulsion.

[64] The other case Mr. Janson relies upon is similarly distinguishable. *Sullivan v. PJ United, Inc.*, No. 13-1275, 2017 WL 10581105, at *2–3 (N.D. Ala. Feb. 13, 2017) (defendants demanded arbitration, did not pay the arbitrator, and intentionally misled plaintiff).

[65] Breach of contract, promissory estoppel, and unjust enrichment claims are all governed by a four-year statute of limitations under Pennsylvania law and are therefore timely. 42 PA. STAT. AND CONS. STAT. ANN. § 5525; *Reese v. Tyler*, No. 1769-2016, 2017 WL 3034502, at *1 (Pa. Super. Ct. July 18, 2017) (citing 42 PA. CONS. STAT. § 5525(a)(8)) ("Breach of contracts are governed by a four year statute of limitations[.]"); *Campbell v. Dreger*, No. 1210-2018, 2019 WL 2406520, at *2 (Pa. Super. Ct. June 7, 2019) (citing 42 PA. CONS. STAT. § 5525) ("Actions sounding in promissory estoppel, which renders otherwise unenforceable agreements binding, sounds in contract law and thus is governed by a four-year limitations period for contract actions[.]"); *D'Angelo v. JP Morgan Chase Bank, N.A.*, 311 A.3d 595 (Pa. Super. Ct. 2023), *reargument denied* (Feb. 28, 2024), *appeal denied*, 325 A.3d 1260 (Pa. 2024) (citing 42 PA. CONS. STAT. § 5525(a)(4)) ("Claims for unjust enrichment are subject to a four-year statute of limitations.").